Veronice A. HOLT, Plaintiff,

v.

The CONTINENTAL GROUP, INC., Defendant.

Civ. A. No. B–82–119.

United States District Court, D. Connecticut.

April 15, 1982.

Veronice A. Holt, Stamford, Conn., pro se.

Jacob D. Zeldes, Zeldes Needle & Cooper, Bridgeport, Conn., Henry P. Baer, William L. Kandel, Skadden, Arps, Slate, Meager & Flom, New York City, for defendant.

RULING ON PLAINTIFF'S MOTION
FOR A PRELIMINARY
INJUNCTION

ZAMPANO, District Judge.

The plaintiff, Veronice A. Holt, is a black female attorney who was employed by the defendant, The Continental Group, Inc. ("CGI"), from October 18, 1976 to January 20, 1982. During this period of time, the plaintiff continually requested that the defendant rectify discrimination in her salary, benefits, and terms and conditions of employment. The defendant rejected her claims and, as evidence of its lack of dis-

crimination, pointed to her substantial raises in salary over the years from $35,000 to over $57,000, her promotions within CGI's Corporate Legal Department, and her increased duties and client contact.

On October 22, 1982, the plaintiff filed a complaint of race and sex discrimination in employment against CGI with the Connecticut Commission on Human Rights and Opportunities ("Commission"). Believing that this action induced CGI to engage in "retaliatory conduct," the plaintiff submitted another complaint to the Commission on December 10, 1981. These matters are presently pending decision on the merits.

On January 20, 1982, the plaintiff was discharged by CGI. In the letter of termination, CGI cited eight examples of plaintiff's disruptive behavior which "seriously hampered the efficient operation of the Legal Department and the morale of other members of the Department."

In response, plaintiff commenced the instant lawsuit for injunctive relief, seeking reinstatement to her position as Securities Counsel for the defendant pending the outcome of the administrative proceedings before the Commission. Her application alleges that she was discharged in retaliation for filing complaints of employment discrimination against CGI and that, unless reinstated, she will suffer irreparable harm as a result of the substantial loss of income, the embarrassment of being wrongfully terminated, and the "chilling" effect the discharge will have on other employees who may wish to exercise their rights under Title VII of the Civil Rights Act of 1964. A hearing was held before this Court during which the parties submitted voluminous documentary evidence but called no witnesses.

It is well established that a preliminary injunction is an extraordinary remedy that should not be granted except upon a clear showing of 1) irreparable harm and 2) either a) a likelihood of success on the merits or b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party seeking the relief. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2 Cir. 1979) (per curiam); see also *KMW International v. Chase Manhattan Bank*, 606 F.2d 10, 14 (2 Cir. 1979); *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2 Cir., cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

■ Preliminary, there is a serious question whether this Court has jurisdiction to grant the relief requested because the plaintiff has not received a "right to sue" letter from the EEOC, a jurisdictional prerequisite to a suit on the merits of a Title VII claim. See, e.g., *General Telephone Co. of the Northwest v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). In the absence of a right to sue letter, the Court may grant interim injunctive relief to maintain the status quo, *Sheehan v. Purolator Courier Corporation*, 663 F.2d 1069 (2 Cir. 1981), but it is doubtful whether it can issue an injunction which materially alters the status quo and, in effect, grants relief that is only properly determinable after a trial on the merits. See *Jerome v. Viviano Food Co.*, 489 F.2d 965 (6 Cir. 1974).

Even assuming jurisdiction, the plaintiff has not made a satisfactory showing of either likelihood of success or, most importantly, of irreparable harm. On the merits, the parties have introduced a plethora of documents including affidavits, exhibits, company memoranda and data, and briefs. Some reflect that the plaintiff was a competent, personable, and conscientious attorney who served with skill and creativity. Other materials indicate that the plaintiff was a hostile, disruptive, and unprofessional member of the Legal Department who lacked the qualifications and ability to perform the duties entrusted to her by CGI. Under the fact situation in this case, these conflicting "paper" proffers of proof do not provide an adequate evidentiary record upon which the Court can determine wheth-

er the plaintiff will likely prevail on the merits.

 What is clear, however, is that the plaintiff has failed to make the requisite showing of irreparable harm to justify injunctive relief. While it is true she is presently unemployed, the plaintiff has failed to pursue other employment opportunities. Her moving papers are devoid of any allegation that she has exercised due diligence to obtain alternative employment or that her legal services are unacceptable to other employers because of the stigma of the loss of employment with CGI. In any event, financial distress or inability to find other employment, absent extraordinary circumstances, falls short of the type of irreparable injury which is a necessary predicate to the issuance of injunctive relief. *Sampson v. Murray*, 415 U.S. 61, 91–2, 94 S.Ct. 937, 953–54, 39 L.Ed.2d 166 (1974); *EEOC v. City of Janesville*, 630 F.2d 1254, 1259 (7 Cir. 1980).

Finally, the Court is satisfied that reinstatement at this time would be inappropriate. The Legal Department consists of a small group of lawyers; trust, confidence, and camaraderie are essential ingredients of an effective working relationship. The record, not yet fully developed, already demonstrates an unusual degree of hostility and antagonism between the plaintiff and her former colleagues. If she is thrust back into their presence by court order during the course of the pending proceedings, the acrimony will surely be exacerbated and lead to even more misunderstandings, animosity, and distractions than existed while plaintiff was employed at CGI. Moreover, it is inevitable that the Legal Department will be involved in the preparation, strategy, and decision making with respect to the plaintiff's legal actions against CGI. If plaintiff is a working associate of the defense team acting on behalf of CGI, there would be a high probability of a serious conflict of interest and a likelihood of a breach of the confidences that must exist between client and counsel. See, e.g., *St. John v. Employment Development Dept.*, 642 F.2d 273, 275 (9 Cir. 1981); *EEOC v.*

*Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 926–27 (S.D.N.Y.1976), *aff'd mem.*, 559 F.2d 1203 (2 Cir.), cert. denied, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

Accordingly, the plaintiff's application for injunctive relief is denied; the complaint is dismissed.