**Veronice A. HOLT, Plaintiff–Appellant,**

v.

**KMI–CONTINENTAL, INC., Defendant–Appellee.**

**No. 655, Docket 95–7297.**

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1995.

Decided Sept. 4, 1996.

---

Veronice A. Holt, Washington, D.C., Pro Se.

Lisa J. Damon, Hartford, CT (Albert Zakarian, Day, Berry & Howard, Hartford, CT, of counsel), for Defendant–Appellee.

Before: KEARSE, MINER and PARKER, Circuit Judges.

PARKER, Circuit Judge:

## I. BACKGROUND

Veronice A. Holt, a black female attorney, appeals from a judgment of the District Court of Connecticut (Alfred V. Covello, *Judge*) dismissing her complaint brought under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), and 42 U.S.C. § 1981 (1994). Plaintiff sued defendant, KMI–Continental, claiming that defendant discriminated against her in the terms and conditions of her work because of her race and sex in violation of Title VII and § 1981. The district court dismissed all of plaintiff's pay discrimination claims because it determined that they were barred by the statute of limitations applicable to § 1981 and (although it was not pled) to the Equal Pay Act. Finding no genuine issues of material fact, the court granted defendant's motion for summary judgment on plaintiff's Title VII claims of discrimination in promotions, job tracking, and retaliation.

For the reasons that follow, we affirm the district court's dismissal of the § 1981 claim as well as the claim of discrimination in promotions and job tracking, and the retaliation claim. The district court erred, however, when it failed to consider the merits of plaintiff's Title VII pay discrimination claim after holding that the § 1981 pay discrimination (and unpled Equal Pay Act) claims were time barred. After reviewing the merits of the defendant's motion for summary judgment on the pay discrimination claim, we hold that plaintiff has not demonstrated that defendant's explanation for any pay discrepancy is pretextual. We grant defendant's motion for summary judgment on this alternative ground.

### A. *Procedural History*

This is the third time plaintiff appeals to this court. In order to make some sense of what has happened thus far, a review of the procedural history of the case follows.

In October of 1981, while still employed at Continental, Holt filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") alleging that Continental had unlawfully discriminated against her in pay, promotions, and benefits

because of her race and sex. Two months later, Holt filed a second complaint with the CCHRO alleging retaliation. On January 22, 1982, defendant discharged plaintiff. On February 3, 1982, Holt amended her CCHRO complaint to include a claim of retaliatory discharge.

On February 16, 1982, Holt filed a complaint in federal district court under Title VII and § 1981. Plaintiff sought the sole relief of a preliminary injunction reinstating her to her position with Continental pending the outcome of the administrative proceedings before the CCHRO. The district court denied the preliminary injunction and dismissed the complaint because plaintiff had failed to demonstrate either likelihood of success on the merits or irreparable harm required for injunctive relief. *Holt v. Continental Group, Inc.*, 542 F.Supp. 16, 17 (D.Conn.1982).

This court reversed and remanded because the district court had not considered whether defendant's allegedly retaliatory discharge of plaintiff could have a chilling effect on other individuals considering pursuing relief under Title VII or § 1981, or on witnesses who might testify on behalf of plaintiff, thus satisfying the irreparable injury requirement for a preliminary injunction. *Holt v. Continental Group, Inc.*, 708 F.2d 87, 91 (2d Cir.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984). In addition, the court explained that if plaintiff wanted to pursue her § 1981 action for damages, she should amend her complaint so it could be considered on the merits if the court denied the preliminary injunction motion. *Id.* at 92.

On remand, plaintiff chose not to amend her complaint to add a § 1981 claim for damages. However, she added § 1981 and § 1983 claims against various state officials. The district court dismissed the claims against the state officials, *Holt v. Continental Group, Inc.*, 631 F.Supp. 653 (D.Conn.1985), denied the preliminary injunction in an unpublished opinion and dismissed the complaint. *Holt v. Continental Group, Inc.*, No. B–82 Civ. 119 (D. Conn. June 6, 1985). Plaintiff appealed and this court affirmed by summary order. *Holt v. Continental Group, Inc.*, 788 F.2d 3 (2d Cir.1986), *cert. denied*, 479 U.S. 839, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986).

On August 6, 1986, the Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter on the claims of discrimination in pay, benefits, and promotion. Plaintiff filed suit on August 8 on those claims.[1] On February 24, 1993, the EEOC issued a right to sue letter on the retaliation claims. On March 25, 1993, plaintiff filed suit on those claims.[2] On September 15, 1993, the district court granted Continental's motion to consolidate the two cases. Both parties filed motions for summary judgment and the court granted defendant's motion on all counts. *Holt v. KMI Continental, Inc.*, No. B–86 Civ. 389 & 93 Civ. 619 (D.Conn. Feb. 16, 1995). This appeal followed.

**B. Facts**

Holt is a black female attorney. She graduated from George Washington law school in 1973. In 1976, Continental hired her to work in the legal department of a subsidiary, Continental Forest Industries ("CFI"), as Assistant General Counsel. Her starting salary was $26,000, which was higher than her previous salary and consistent with her three years of work experience. During her ten-

---

1. Plaintiff's complaint indicates that the right to sue letter was issued on May 7, 1986 and that she received it on May 20, 1986. The district court's opinion states that plaintiff received her right to sue letter on August 6, 1986. Although a copy of the right to sue letter is not in the record, it is quite possible that the district court erroneously used the August 6, 1986 date. In addition, although plaintiff's papers suggest that suit was filed on August 6, 1986, the docket sheet indicates that the complaint was actually filed on August 8, 1986. Any difference is immaterial since in either instance suit was filed within 90 days of receipt of the right to sue letter, the statutory requirement in a Title VII case. *See* 42 U.S.C. § 2000e–5(f)(1)

2. The district court's opinion erroneously states that plaintiff received her right to sue letter on April 5, 1993, eleven days after suit was filed; the record supports plaintiff's version of the dates in this instance.

We note that it is unclear why four years elapsed before the EEOC issued plaintiff a right to sue letter on the discrimination claims, much less why it took seven more years before plaintiff received a right to sue letter on the retaliation claim.

ure at Continental, plaintiff repeatedly complained that her salary was lower than those of her colleagues. Defendant attempted to alleviate plaintiff's concerns, often awarding her substantial raises. She was being paid $57,500 at the time she was terminated in 1982.

Although Holt received significant raises while employed by defendant, she was not permitted to participate in the Management Incentive Plan, ("MIP") the company's bonus program. Prior to a 1979 revision, the company permitted all attorneys to participate in the MIP. The revision resulted in higher salaries for attorneys, so Continental could more readily compete for legal talent, but fewer people were eligible for participation in the MIP. Following this revision, defendant did not permit attorneys with a C–2 salary grade to participate in the MIP with the exception of C–2 level attorneys who were participating prior to the revision and were "grandfathered" into the program. Neither Holt nor any other black employees met the eligibility requirements of the MIP program.

During Holt's tenure, three promotional opportunities became available. Holt sought out each promotion, and although she received other promotions, she was not awarded any of these particular promotions. She argues that the defendant's promotional policies were discriminatory because defendant filled each of the positions with a white colleague or left it unfilled.

The first position to become available was for an Associate General Counsel at CFI. Plaintiff's supervisor told her that she was not yet ready for the position, although she received a qualified evaluation for it. The position remained unfilled and various components of the job were delegated to other employees. A short time later, defendant promoted Holt to Corporate Counsel II at CGI, another of the subsidiaries. When plaintiff became discontented with the Corporate Counsel II position, defendant offered her two options for promotion. She ultimately accepted a new position as Securities Counsel.

The second promotion, which plaintiff did not receive, was Corporate Secretary of CGI. Defendant promoted William Sisley, a white male, who had four years more experience than Holt. The third position that became available was Assistant General Counsel of CGI. Defendant told Holt she was not yet ready for the position. The position remained vacant until after Holt was terminated. Defendant eventually gave the promotion to Patricia Heck, a white woman with more experience than Holt.

In support of her retaliation claim, Holt relies on the following evidence. Holt filed a complaint with the CCHRO in October 1981 claiming that Continental had discriminated against her in pay, benefits, and promotion because of her race and sex. Throughout her tenure with Continental, Holt received positive performance reviews. However, in December of 1981, Holt's performance review was "fully satisfactory," two levels below her prior rating. Plaintiff filed another complaint with the CCHRO two days later claiming retaliation.

Defendants respond that in January of 1982, the problems between plaintiff and defendant escalated. Two company executives complained about plaintiff's performance. One of the executives indicated that he was uneasy working with plaintiff. Without the proper authority, plaintiff unilaterally fired outside counsel and then hired new outside counsel. Defendants also maintain that plaintiff was disruptive in the office and was unable to get along with her colleagues. For example, plaintiff apparently demanded that a colleague, who was working on a business matter under deadline, relinquish access to the only available word processor so that she could work on a personal matter. After discussing these and other problems with plaintiff, defendants determined that plaintiff was no longer suited to her position. On January 20, 1982, plaintiff was fired.

## II. DISCUSSION

██ We review the grant of summary judgment *de novo* under the same standard applied by the district court. *Taggart v. Time Inc.*, 924 F.2d 43, 45–46 (2d Cir.1991). A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. at 2513. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). With these principles in mind, we review the opinion below.

### A. Discriminatory Denial of Promotions and Job Tracking

■ Plaintiff alleges that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by intentionally discriminating against her on the basis of her race and sex. The analytical framework for evaluating a claim of discrimination in violation of Title VII is well established. We apply the three-step burden shifting analysis enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2746–48, 125 L.Ed.2d 407 (1993); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). Initially, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94. Second, assuming the plaintiff demonstrates a prima facie case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for refusing to promote the employee. *See Gallo v. Prudential Residential Services, Ltd.*, 22 F.3d 1219, 1226 (2d Cir.1994). Third, if the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination. *Hicks*, 509 U.S. at 515, 113 S.Ct. at 2751; *Gallo*, 22 F.3d at 1225.

■ In order to survive a motion for summary judgment, at the third step plaintiff must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's sex or race was the real reason for the discharge. *Viola v. Philips Medical Systems of North America*, 42 F.3d 712, 717 (2d Cir.1994). The plaintiff has the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her on account of her sex and race. *See Gallo*, 22 F.3d at 1224.

■ Plaintiff contends that the district court erred when it granted defendant's motion for summary judgment on her claim of discriminatory denial of promotions. The court held that plaintiff failed to demonstrate that the defendant's asserted reason for denying her the promotions was pretextual. We agree that plaintiff has not demonstrated pretext and affirm the district court on this issue.

■ With respect to the Associate General Counsel position with CFI, plaintiff cannot make out a prima facie case because defendant did not seek applicants to fill the position. Instead, the duties were delegated to other attorneys. Since plaintiff has not made out a prima facie case, her claim of discrimination fails. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ Plaintiff did make out a prima facie case for her other promotion claims by showing that she is a member of a protected class, a black female; that she applied for the positions; that she was qualified for the positions; and that the positions were filled by a white male and a white female.

■ Defendant then articulated legitimate, non-discriminatory reasons for refusing to promote Holt. Defendant awarded the second promotion, for Corporate Secretary of CGI, to William Sisley, a white male, rather than Holt. Defendant explains that Sisley had significantly more experience than Holt, and thus was better qualified for the promotion. Defendant refused to promote Holt to Assistant General Counsel for CGI because she was not yet qualified for the position. Some time after defendant terminated Holt, defendant promoted Patricia

Heck, who had more experience than Holt. The evidence that defendant filled these two positions with white applicants who were more qualified than plaintiff rebuts any presumption of discrimination. *Patterson v. McLean Credit Union*, 491 U.S. 164, 187, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989).

Plaintiff failed to put forth any evidence to suggest that defendant's articulated non-discriminatory reasons are pretextual. She has not shown, for example, that others with equal or less experience were promoted, or that the defendant had a policy of promoting based on anything other than experience. She attempts to show pretext by asserting her personal belief that she was the most qualified person for the various positions. Her opinion, however, is belied by the facts which indicate that the people who received the promotions had more experience than plaintiff. Since none of the evidence suggests that a genuine issue of material fact remains concerning defendant's articulated reasons, the district court properly granted summary judgment for the defendant.

Plaintiff's claim that defendant only interviewed whites for "white" positions and blacks for "black" positions is without any evidentiary support. On the record before us, no reasonable inference could be drawn in favor of the plaintiff on a material issue of fact regarding the job tracking claim. The district court properly granted summary judgment on this issue.

### B. *Retaliation Claim*

 Plaintiff asserts that defendant retaliated against her because she filed complaints with the CCHRO and the EEOC. The district court determined plaintiff had not shown that defendant's legitimate, non-discriminatory reasons for terminating plaintiff were pretextual. We agree with the district court's reasoning on this issue and affirm the grant of summary judgment.

 A prima facie case of retaliation under Title VII requires the plaintiff to show "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected ac-

tivity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995); *see also Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 64 (2d Cir.1992). Upon such a showing, the defendant must articulate legitimate non-discriminatory reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive. *Tomka*, 66 F.3d at 1308.

On October 22, 1981, plaintiff filed a complaint with the CCHRO. Plaintiff contends that after she filed the complaint, her performance reviews suffered. Defendant explains that plaintiff was in a new position and that she received an acceptable evaluation of "fully satisfactory." Plaintiff offers no evidence that the review was retaliatory. She further alleges that the denial of promotion and refusal to hire an attorney to work with her in the Securities Department was retaliatory. The promotion claim has been addressed above. Defendant explains that it decided not to hire an attorney to work with Holt in the Securities Department due to a company-wide hiring freeze. Plaintiff presents no evidence that defendant's articulated explanation is pretextual. We also note that plaintiff received at least one significant raise after she filed her first complaint with the CCHRO, suggesting that defendant was not retaliating against her.

 Finally, plaintiff contends that defendant fired her in retaliation for filing her complaint. Defendant came forward with several legitimate reasons for the decision to fire plaintiff. Defendant received complaints from company executives about plaintiff's performance. In addition, defendant proffered evidence which suggests that plaintiff had difficulty working with her co-workers and supervisors. The district court correctly found that Continental articulated several legitimate reasons why Holt was fired. She was disruptive; there had been complaints by clients; she did not take direction from her supervisors. These are all legitimate reasons for firing an employee. *See Graham v. Texasgulf, Inc.*, 662 F.Supp. 1451, 1462 (D.Conn.1987), *aff'd*, 842 F.2d 1287 (2d Cir. 1988).

In order to prevail, plaintiff must show that these articulated reasons are pretextual. Plaintiff, however, has put forth no evidence to show that defendant's asserted reasons for the retaliation were pretextual. Since no genuine issue of material fact remains, the district court correctly granted summary judgment on this issue and we affirm.

## C. *Discrimination in Pay and Benefits*

■ Plaintiff's complaint also alleges that defendant discriminated against her on the basis of her sex and race in determining her salary and benefits in violation of § 1981 and Title VII. The district court determined that the § 1981 claim was barred by the statute of limitations applicable to such claims. The court further found that the sex-based pay discrimination claim was barred by the Equal Pay Act's statute of limitations. Accordingly, the court granted defendant's motion for summary judgment on the entire pay discrimination claim.

■ Since § 1981 does not have a statute of limitations, federal courts use the most analogous state statute of limitations in claims brought under § 1981. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987). In Connecticut, the applicable period is the three year statute of limitations in tort. Conn. Gen.Stat. Ann. § 52–577 (West 1991). Plaintiff attempts to invoke the Connecticut "savings" statute,[3] and Rule 15(c) of the Federal Rules of Civil Procedure,[4] in order to extend the limitations period for her present claim. Plaintiff's argument fails because, *inter alia,* the savings statute only applies if the original claim was dismissed for procedural reasons and not on the merits. *Legassey v. Shulansky,* 28 Conn.App. 653, 659, 611 A.2d 930,

933–34 (1992). The district court dismissed the preliminary injunction motion because plaintiff failed to show irreparable injury; the court did not dismiss for procedural reasons. *Holt v. Continental Group, Inc.,* No. B–82 Civ. 119 (D. Conn. June 6, 1985). Since plaintiff filed the claim more than three years after she knew or should have known of the discrimination, the court correctly determined that the § 1981 claim was barred by the applicable statute of limitations. We affirm the dismissal of the § 1981 claim.

■ The court erred, however, in failing to consider plaintiff's claim that defendant discriminated against her in pay and benefits because of her race in violation of Title VII. Since Title VII and § 1981 provide distinct causes of action and different liability schemes, *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1316 (2d Cir.1995), dismissal of the § 1981 claim did not fulfill the court's duty to consider plaintiff's claims brought pursuant to Title VII.[5]

■ The district court also erred in dismissing plaintiff's sex based pay discrimination claims on statute-of-limitations grounds. Although plaintiff sued for sex discrimination under Title VII, and never mentioned the Equal Pay Act, the district court found that the sex based pay discrimination claim was time barred because the claim could be construed as a claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1)(1994). The court reasoned that such a construction would invoke the Equal Pay Act's two year statute of limitations. 29 U.S.C. § 255(a)(1994). The district court explained that the standards of the Equal Pay Act apply in sex discrimination claims whether the suit is plead under Title VII or the Equal Pay Act, and thus

---

**3.** The statute provides that "[i]f any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of [various procedural problems] the plaintiff ... may commence a new action ... for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment." Conn. Gen.Stat. Ann. § 52–592(a) (West 1991).

**4.** Plaintiff's reliance on Rule 15(c) is misplaced because Rule 15(c) is limited to relation back of

amended pleadings and her complaint is not an amended pleading.

**5.** The Title VII claim was not time barred. Plaintiff could not file her Title VII claim until she received a right to sue letter from the EEOC. *See Holt v. Continental Group,* 708 F.2d 87, 89 n. 1 (2d Cir.1983). That occurred in May of 1986, just three months prior to the filing of this Title VII suit.

determined that the Equal Pay Act's statute of limitations barred plaintiff's claim.

While it is true that Title VII and the Equal Pay Act are interrelated, the district court misunderstands the relationship between the two statutes. The Supreme Court has held that the Bennett Amendment to Title VII incorporates the enumerated affirmative defenses of the Equal Pay Act into Title VII in sex discrimination cases. *County of Washington v. Gunther,* 452 U.S. 161, 170–171, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981). The affirmative defenses discussed in *Gunther* are substantive in nature and are included in the text of the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1) (providing exceptions to the requirement of equal pay for equal work if the inequality is due to a seniority system, a merit system, a system which measures earnings by production, or a differential based on a factor other than sex). In contrast, while it is true that the statute of limitations is an affirmative defense, it is procedural and it is not included in the text of the Equal Pay Act.

Title VII has its own statutorily prescribed time limitations. Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful discrimination, or if the claimant initially filed a complaint with a state or local agency, within 300 days of the allegedly discriminatory conduct, or within thirty days of receiving notice that the state or local agency has terminated the proceedings, whichever is earlier. 42 U.S.C. § 2000e–5(e); *Gomes v. Avco Corp.,* 964 F.2d 1330, 1332 (2d Cir. 1992). Once a claimant has received a right to sue letter from the EEOC, suit must be filed within ninety days. 42 U.S.C. § 2000e–5(f)(1); *Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994). Plaintiff's claims are timely under these rules since she made a timely complaint to the EEOC and then filed suit within ninety days of receiving her right to sue letter. We know of no precedent that indicates that the Equal Pay Act's statute of limitations applies to Title VII claims of sex-based pay discrimination. Thus we find that the court erred when it failed to review the sex based pay discrimination claim under Title VII.

█ We now consider defendant's motion for summary judgment on the merits in order to determine whether the dismissal should be affirmed on other grounds, or whether the case must be remanded for further proceedings. As discussed above, we proceed under the *McDonnell Douglas* framework. Plaintiff must put forth a prima facie case; defendant must articulate a legitimate, non-discriminatory reason for its actions; then plaintiff must show that the proffered reason was pretextual and that more likely than not the true reason was discriminatory. *See Viola,* 42 F.3d at 715–17. In order to survive a motion for summary judgment, plaintiff must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's sex or race was the real reason for the discharge. *See id.* at 717.

Plaintiff contends that defendant discriminated against her by paying her significantly less than other employees who were white and/or male. Defendant defends the salary differentials explaining that any difference in salary is due to a difference in experience. A review of the salaries and level of experience for each of the individuals in the Corporate Counsel II position supports defendants' explanation. The following chart reflects the prior experience and salary of members of the Corporate Legal Department in May of 1980.

| Corporate Counsel II | Experience | Salary |
| --- | --- | --- |
| Holt | Grad. law school in 1973; 1 yr. at small firm; 2 yrs. at Scott Paper Corp. | $45,000 |

| Corporate Counsel II | Experience | Salary |
|---|---|---|
| Patricia Heck [6] | Grad. law school in 1972; Clerk for C.J. for the District of Rhode Island; 7 yrs. at Dewey Ballantine | $65,000 |
| John Garrigan | Grad. law school in 1955; 19 yrs. experience as General Counsel for Straton Group | $60,500 |
| Lee Rettig | Grad. law school in 1961 | $48,000 |
| William Sisley | Grad. law school in 1969; 4 yrs. at SCM Corp. | $61,000 |
| John French | Grad. law school in 1958; Assoc. at Satterlee & Stephens; Assoc. at Milbank & Tweed | $56,175 |

With the exception of Heck, each of the individuals in the Corporate Counsel II position had been out of law school substantially longer than Holt, and their salaries were greater as a result. Although Heck had been out of law school only one year longer than Holt, she had clerked for the Chief Judge of the United States District Court for the District of Rhode Island and then spent seven years at a major New York law firm. Thus, defendant's explanation that any difference in salary was due to experience applies to Heck as well. The evidence indicates that any difference in salary among people employed in the Corporate Counsel II position is readily explained by a difference in experience.

Plaintiff makes an additional claim regarding the MIP bonus plan. Plaintiff contends that defendant discriminatorily refused to allow her to participate in the MIP bonus program. Specifically, she claims that defendant changed the program so that plaintiff would be unable to receive a bonus. In support of her claim, plaintiff explains that she was the first black person to have a C–2 salary grade, and that around the time that she attained C–2 status, defendant altered the program so that she would be ineligible for participation in the MIP bonus program. Plaintiff also notes that she was the first person ever to hold the Corporate Counsel II position and not receive a MIP bonus.

Defendant denies that the change in policy was due to plaintiff's race or sex. Instead, defendant maintains that the MIP bonus program was discontinued for all C–2 grade attorneys in December of 1979 so that the company could increase the salaries for these same attorneys in order to allow defendant to better compete for legal talent. Under the revised policy, employees would only be eligible for participation in the MIP bonus program once they achieved a C–5 grade. Defendant claims that after this change in eligibility for MIP participation, "all attorneys hired by the Department at a grade level below C–5 were ineligible for participation in the MIP." Even though the program was eliminated, "any attorney in the Department who had previously been eligible for an MIP [remained] eligible without reference to his or her grade level." Thus, all previously participating attorneys in Continental's legal department were "grandfathered" into the MIP program. These "grandfathered" employees received both increased salaries and the MIP bonus.

Plaintiff's allegation gives us pause because one consequence of the elimination of the MIP program along with the grandfathering provision is a rather dramatic disparity between Holt's total compensation compared with all others in the Corporate Counsel II position. All of the Corporate Counsel II employees, with the exception of Heck who was hired after the elimination of the program, received substantial bonuses in addition to the salaries reflected in the chart. A true comparison of compensation packages in May of 1980 reveals the following (experience other than year of law school graduation is not repeated):

6. Heck was not hired until January of 1981. Her starting salary was $65,000. It should be noted that by 1981 Holt's salary had increased to $52,500 and by 1982 it had increased to $57,500.

| Corporate Counsel II | Salary | Bonus | Total |
| --- | --- | --- | --- |
| Holt ('73) | $45,000 | 0 | $45,000 |
| Patricia Heck ('72) | $65,000 [7] | 0 | $65,000 |
| John Garrigan ('55) | $55,000 | $15,246 | $70,246 |
| Lee Rettig ('61) | $48,000 | $10,445 [8] | $58,445 |
| William Sisley ('69) | $61,000 | $15,019 | $76,019 |
| John French ('58) | $56,175 | $13,482 | $69,657 |

Thus in 1980 Holt received over $13,000 less than the next lowest paid attorney and more than $30,000 less than the highest paid person on the chart.

A review of the status of each of these members of the Corporate Legal Department indicates, however, that the new policy was uniformly applied. Rettig, Garrigan, and French all received MIP bonuses in the Corporate Legal Department in 1978 and 1979, prior to the change, so they were grandfathered and continued to receive a bonus. Sisley came into the department in May of 1980 as both Corporate Counsel II and Corporate Secretary. He was eligible for the MIP bonus under the new policy because he had a C–5 salary grade. Holt and Heck were hired into the Department after the change and thus were not permitted to participate in the MIP program. That Heck, who is white, was not permitted to participate in the program bolsters defendant's assertion that the policy change was not racially motivated.

■ In an effort to show that defendant's decision was actually racially motivated, plaintiff attempts to rely on two internally generated corporate reports, the Braye Report and the Campbell Report.[9] The Braye Report involves a human resources departmental study regarding Continental's problem relative to retaining black employees. The report is based on a series of interviews with exempt black employees of Continental and states that "[i]t is believed that blacks are undergraded and underpaid." Plaintiff also mentions the Campbell report which reviewed Continental's potential exposure for Equal Pay violations. Continental seeks to minimize the importance of these reports by explaining that they are imperfect, privileged, and irrelevant to Holt's claims.

■ We agree that the Campbell Report (which seeks legal advice) is protected by the attorney-client privilege. The admissibility of the Braye Report is not so clear. Defendant claims that it is protected by the so called "self-evaluative" privilege. However, defendant provides no authority for the existence of such a privilege in Connecticut, and we find none. *Cf. United States v. Dexter,* 132 F.R.D. 8 (D.Conn.1990) (refusing to apply the self-evaluative privilege where federal law governs and the government sought to compel discovery). In any event, the Braye Report resulted from a study in 1978 designed to assist the corporation in retaining black employees. Its indication of a belief that at that time blacks were undergraded and underpaid has little or no probative value on the issue of the corporation's motivation in amending the MIP program at the end of 1979. Even if it were admissible, the Braye Report simply would not demonstrate that defendant's proffered non-discriminatory reason for modifying the MIP program was pretextual.

Holt has failed to put forth evidence to suggest that defendant's explanations for the difference in compensation is due to anything other than experience and the legitimate alteration of the MIP bonus plan. Since she has not identified any evidence which would demonstrate that defendant's proffered reasons are pretextual, we grant defendant's motion for summary judgment on the pay discrimination claims.

## III. CONCLUSION

We find that the trial court properly granted defendant's motion for summary judg-

---

7. Holt argues that as of January of 1981, the difference between her salary and Heck's reflects the amount Holt would receive if allowed to participate in the MIP bonus program. Although the percentage difference between the two salaries may be in the range of a large bonus, we have already explained that the difference in the salaries is readily explained by a difference in experience. If the bonus program were being implemented in a discriminatory fashion, we would expect to see Heck getting a bonus in addition to her salary.

8. The record is inconsistent on the amount of Rettig's bonus. The record indicates that Rettig's bonus was $10,445; but it also indicates that her bonus was $9,792 which would make her total compensation $57,972.

9. These reports were filed under seal with the district court as defendant's exhibits.

ment on plaintiff's § 1981 claim because it was barred by the statute of limitations. In addition, because no genuine issues of material fact remain on either plaintiff's claim of discrimination in promotions and job tracking, or her retaliation claim, summary judgment was appropriate on those issues. The decision of the district court is affirmed as to each of these issues.

The district court erred in failing to review plaintiff's claim of discrimination in pay and benefits in violation of Title VII. Having reviewed the substance of defendant's motion for summary judgment, we determine that plaintiff has failed to put forth any evidence which would establish that defendant's proffered reasons are pretextual. Accordingly, defendant's motion for summary judgment is granted. The district court's dismissal of the pay discrimination claims is affirmed on these grounds.