**Lucille GRUBERG, Plaintiff,**

v.

**The BOARD OF EDUCATION OF THE SEWANHAKA CENTRAL HIGH SCHOOL DISTRICT, Defendant.**

**No. CV 96–3042(ADS).**

United States District Court,
E.D. New York.

April 27, 1998.

Rosen, Leff, Attorneys, Hempstead, NY, for Plaintiff by Robert M. Rosen, Delvis Melendez, of counsel.

Jaspan, Schlesinger, Silverman & Hoffman, L.L.P., Garden City, NY, for Defendant by Stanley A. Camhi, Carrie Preble, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This matter arises from the claims of the plaintiff, Lucille Gruberg ("Gruberg" or "the plaintiff"), under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"), and New York State Executive Law §§ 296 and 297. Presently before the Court is the defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. BACKGROUND

At the time of the filing of the complaint, Gruberg was a seventy-three year old woman who had been employed by the defendant, the Board of Education of the Sewanhaka Central High School District (the "School District" or "the defendant"), as an English teacher in the Elmont Memorial High School ("High School") for more than twenty years, from September 1972 until June 1994. The plaintiff accurately characterizes her annual evaluations from the time she began her career through 1990 as "more than satisfactory" and often "exemplary." For example, her annual evaluation for the 1988–1989 school year included the following high praise:

> Mrs. Lucille Gruberg is an experienced and knowledgeable teacher of English.
>
> ... Mrs. Gruberg planned lessons that would not only cover the many facets of the English courses of study but would also stretch students' minds. For her English 12 and 12NR students, especially, Mrs. Gruberg continually searched for stimulating materials that would force these students to think about what they wanted out of life and how to respond to the challenges that life offered.
>
> Mrs. Gruberg is a caring teacher who tries to help students to reach their potential. *She sets high standards for her classes and is completely in control of her students and her lesson. She respects her students, and they respect her.*
>
> Mrs. Gruberg is always willing to try out new ideas and approaches to encourage her students to write with confidence and to write better ....
>
> ...
>
> Mrs. Gruberg is a responsible member of the English Department, performing her various duties effectively and conscien-

tiously. This has been an excellent, productive year for Mrs. Gruberg.

(Plaintiff's Ex. B. Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment) (emphasis added).

In 1989, the year after she received such glowing accolades, there was a change in administration at the school. Diane Scricca became the Principal of Elmont Memorial High School and Robert Walsh became the Chair of the English Department. That same year, the plaintiff's annual evaluations suddenly plummeted. While the previous year's evaluations commended Gruberg's classroom management skills, Walsh's October 1990 evaluation criticized the teacher, suggesting that she needed to me more of "a strong classroom leader, firmly in control of the entire class at all times." (Defendant's Ex. E to Memorandum of Law in Support of Summary Judgment Motion). Walsh's evaluation of the plaintiff stated that "[s]everal times when questioning or helping a child, you so focused on that child that the remainder of the class was ignored and they became restless and went off task." He criticized her for such things as momentarily turning her back on the class to provide a tissue for a student, and for taking her eyes off the class when peering into the textbook for information, both of which purportedly lead to "lack of eye contact [which] causes problems." Despite these criticisms, Walsh concluded that Gruberg's lesson was "satisfactory" with the "aim of the lesson being accomplished." The plaintiff alleges that following her evaluation conference with Walsh, he told her that she "really ought to retire" and that "the job is getting to be too much for you and it will only get worse."

According to the plaintiff, things, indeed, got much worse for her. The teacher states that "at that point, Mr. Walsh and Ms. Scricca began to make my life impossible in order to force my retirement. I believe, without any doubt whatsoever, that they wanted me to retire because of my age." (Gruberg Aff., ¶ 11). Her evaluations went from glowing in 1989, the year before she began working for Scricca and Walsh, to "mixed," and finally, to "unsatisfactory." By the plaintiff's account, once Scricca and Walsh came into power, she could not obtain a satisfactory evaluation no matter how hard she tried or whatever she did. "My every move was watched, and every incident the administration thought was improper was documented, no matter how trivial. For example, I was reprimanded for not standing by the door before the bell rang, for allowing my students two minutes at the start of class to settle down, for letting students speak without raising their hands, and for not utilizing the chalk board correctly." (Gruberg Aff., ¶ 13). Her annual performance evaluation for the 1990–1991 school year, while overall satisfactory, noted a "weakness" in her classroom management. The plaintiff alleges that during the following school year, on February 28, 1992, Walsh approached her and said, "Why don't you retire while you still can with dignity?" At the end of the 1991–1992 school year, her annual evaluation was, for the first time in her career, rated "unsatisfactory." (Defendant's Exhibit. L).

In June of 1992, as a consequence of the poor evaluation, Gruberg was placed under the Board of Education's Administration Regulation 4117.1 ["the Regulation"] for the next school year. A teacher placed on the Regulation is, in essence, on probation: a "remediation" plan is developed to address and improve those areas in which the teacher is deemed deficient, she is closely monitored by her supervisor, and more than the usual number of classroom observations are conducted to monitor her progress. The defendant explains that "if the remediation plan fails and the teacher's performance remains unsatisfactory, a decision has to be made as to what other action should be taken." If the teacher is not performing at a satisfactory level, one of the options is for the District to "charge" the teacher with incompetency under § 3020a of the New York Education Law, which provides that in order for a tenured teacher to be discharged for "incompetence," the teacher is entitled to notice of specific charges and hearing before a hearing officer. At such a hearing, the burden of proof is on the District to prove the charges, and the teacher is entitled to representation by counsel, to cross-examine witnesses, and to present witnesses in her own behalf. The hearing officer determines whether the

teacher is "guilty" of the charges and what, if any, penalty should be imposed.

While still in the defendant's employ, the plaintiff filed age discrimination charges with the New York State Division of Human Rights. On August 4, 1992, following a hearing at which the defendant was represented by counsel and the plaintiff proceeded pro se, the State Division rendered a probable cause determination stating that the purported legitimate business reasons provided by the School District for her treatment were pretextual, and that she was discriminated against based on her age.

When the plaintiff returned to work at the beginning of the 1992–1993 school year, she continued to teach under the remediation plan. However, in the plaintiff's words, from then on, Walsh and Scricca constantly "demoralized, belittled, intimidated and [eventually] coerced me into resigning. They did this by singling me out and subjecting me to a standard of review unequal [to] that of any other teacher similarly situated in the District. The[y] engaged in a deliberate and punitive course of conduct designed to force me to resign because of my age.... I worked under constant unwarranted criticism and the threats of an incompetency hearing. I was plagued with numerous requests to retire." (Gruberg Aff., ¶ 31). The plaintiff contends, the defendants "created working conditions for me that were so intolerable that I was forced to tender my resignation in April 1994, effective in June 1994." (Gruberg Aff., ¶ 29).

According to the plaintiff, the defendant's treatment of her was part of a broader discriminatory pattern and practice of ousting older teachers by placing them on the District's Administrative Regulation 4117.1, for purposes of eventually replacing them with younger teachers who are paid less. The plaintiff has named ten other teachers in the district who also were subjected to the Regulation, four of whom also resigned, allegedly as a consequence of being placed on the Regulation and being subjected to treatment similar to that described by Gruberg.

## II. DISCUSSION

### A. Summary Judgment: the Standard

A district court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Vann v. City of New York,* 72 F.3d 1040 (2d Cir.1995).

Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The District Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

Finally, the Court of Appeals has warned that trial courts must be especially cautious about granting summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue. *See, e.g., Gallo,* 22 F.3d at 1224. Since it is rare to find in an employer's records direct proof that a personnel decision was made for a discriminatory reason, whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

## B.  ADEA: The Standards

The ADEA provides, in relevant part, that it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  At trial, it is the plaintiff's burden to prove employment discrimination on the basis of age.  *Gallo*, 22 F.3d at 1224.  The Court notes that age discrimination claims brought under the New York State Human Rights Law, N.Y.Exec. Law §§ 290–301, are governed by the same standards as those brought under the ADEA.  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 467 (2d Cir.1997); *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1158 (2d Cir.1993).

A plaintiff asserting an age discrimination claim must meet an initial burden of presenting evidence sufficient to establish a prima facie case of the alleged violation of ADEA.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995).  Once the plaintiff establishes a prima facie case, the burden shifts to the employer to rebut it through the introduction of evidence of non-discriminatory reasons that support a finding that unlawful discrimination was not the cause of the discharge.  *Hicks*, 509 U.S. at 506–07, 113 S.Ct. at 2746–47; *Cronin*, 46 F.3d at 203.  The plaintiff retains the "ultimate burden of persuasion" and the burden of proof to demonstrate that the challenged employment action was the result of intentional age discrimination.  *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749; *Cronin*, 46 F.3d at 203.  Since, in this case, the plaintiff resigned, she also has the burden of proving a "constructive discharge."

■  A prima facie case of discharge resulting from age discrimination is established if the plaintiff shows, through direct or circumstantial evidence, that: (1) she was within the protected age group; (2) she was qualified for the position; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination.  *Cronin*, 46 F.3d at 204.  To defeat a defendant's motion for summary judgment, the plaintiff need only show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief; and (2) it is more likely than not that an unlawful basis of discharge was the true reason.  *Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 92 (2d Cir.1996).

The parties agree that the plaintiff was within the protected age group.  Instead, the disputed issues in this case center on whether: (1) the plaintiff can establish that she was "discharged"; (2) the "discharge" occurred under circumstances giving rise to an inference of age discrimination; and (3) the defendant had legitimate, non-discriminatory reasons for the employment actions taken.

### i.  Constructive Discharge

■  The plaintiff contends that she has satisfied the "discharge" element of her employment discrimination claim by proffering evidence that she was "constructively discharged."  Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.  *See Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983).  Working conditions are intolerable if they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  *Lopez*, 831 F.2d at 1188 (quoting *Israel Alicea Rosado v. Ramon Garcia Santiago*, 562 F.2d 114, 119 [1st Cir.1977]).

In the Court's view, Gruberg has presented evidence sufficient to raise a material triable issue on the question of constructive discharge.  The "plaintiff's proof allows the inference that she was treated arbitrarily and severely criticized despite her strong

performance. A fact finder could infer, from the facts set forth in the affidavits and deposition testimony, that plaintiff was among the most competent employees in the [school].... [A] reasonable person in [Gruberg's] position might have inferred from the circumstances, including the onslaught of unfounded criticism coupled with the threat of [an incompetency hearing and repeated demands that she retire], that she was compelled to leave.... Viewed as a whole, the facts in the case at hand, if proven, would permit a finder of fact to conclude that [Gruberg] was forced to resign." *Chertkova v. Connecticut General Life Insurance Co.,* 92 F.3d at 92.

The Court rejects the defendant's contention that the plaintiff's resignation does not constitute a "constructive discharge" as a matter of law (Defendant's Memorandum of Law, at 6). In support of this argument, the defendant cites *Stetson v. NYNEX Service Co.,* 995 F.2d 355 (2d Cir.1993), where the Court of Appeals held that a constructive discharge could not be established "simply through evidence that an employee [is] dissatisfied with the nature of his assignments," that he "feels that the quality of his work has been unfairly criticized," or that "the employee's working conditions [are] difficult or unpleasant." In the Court's opinion, the defendant's reliance on *Stetson* is misguided. As the Second Circuit subsequently clarified in *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d at 92,

"While the Court recognizes that a disagreement with management over the quality of an employee's performance will not suffice to establish a constructive discharge.... here there is more than a disagreement over quality. Plaintiff's evidence suggests her supervisor[s] engaged in a pattern of baseless criticisms, [repeatedly demanded her retirement, and threatened to bring her up on incompetency charges, a precursor to her discharge.] ... [A] reasonable person in [Gruberg's] position might have inferred from the circumstances, including the onslaught of unfounded criticism coupled with the threat of [a] termination [hearing], that she was compelled to leave."

The Court finds that there are myriad triable issues of material fact with respect to the issue of constructive discharge. Accordingly, the defendant's motion for summary judgment as to that issue is denied.

### ii. *The Defendant's Asserted Reasons for Their Employment Decisions*

The Court also concludes that this case is replete with genuine issues of material fact with respect to the defendant's asserted reasons for their employment decisions, and whether it is more likely than not that the defendant was motivated by the plaintiff's age. The Court begins with the plaintiff's age, a robust seventy-three. Additionally, in the Court's opinion, the plaintiff has presented substantial circumstantial evidence that the defendant sought to oust her due to her age. Just one year before Walsh and Scricca assumed power, she received a stellar annual review which commended her superior classroom management, innovative teaching style, and inspiring lectures. One year later, the same teacher was criticized for poor classroom control, and purported inability to capture her students' attention. In addition to this circumstantial proof, the plaintiff has alleged that Walsh and Scricca made various statements evidencing their improper motivation—remarks such as that she "really ought to retire" and that "the job is getting to be too much for you and it will only get worse." Such classic, key statements are thinly veiled references to the plaintiff's age—or so a jury reasonably could find. While the defendant asserts that the reason for the sudden, drastic change in the plaintiff's evaluation was due to Walsh's practice of conducting unannounced evaluations, in contrast to his predecessor's preference to forewarn teachers of any observations, this merely underscores the presence of material issues of fact as to the reasons for the defendant's employment decisions.

In addition, the plaintiff has raised the specter of a discriminatory pattern and practice of forcing out older teachers by placing them on the District's Administrative Regulation 4117.1, only to replace them with younger teachers who, interestingly, command less salaries. In fact, the plaintiff has named ten other teachers within the district who

also were subjected to such treatment, four of whom resigned while on the Regulation remediation plan. Moreover, the plaintiff states that she was replaced with a teacher approximately twenty to thirty years her junior who was entitled to a much lower salary than the plaintiff earned. This latter assertion also raises a classic factual issue in an age discrimination case.

In sum, the Court concludes that this case is loaded with genuine issues of material fact. For this reason, and in view of the Second Circuit's directive that the plaintiff's burden of establishing a prima facie case in a discrimination suit is "de minimis," *Chambers*, 43 F.3d at 37, the defendant's motion for summary judgment is denied in all respects.

## III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED,** that the defendants' motion for summary judgment is denied.

**SO ORDERED.**