Patrick A. BARROW and Keith R. Purnell, Plaintiffs,

v.

The BURKE REHABILITATION HOSPITAL, INC., Defendant.

No. 97 Civ. 03427(BDP).

United States District Court, S.D. New York.

March 25, 1998.

Barbara E. Hoey, Eric G. Kussoy, Kelley Drye & Warren, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

Plaintiffs Patrick A. Barrow and Keith R. Purnell have asserted claims against the Burke Rehabilitation Hospital, Inc. ("Burke") for racial discrimination and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; and the New York State Human Rights Law, Executive Law § 296 *et seq.* During the events giving rise to this action, both plaintiffs were employees of Burke.

Burke has moved for summary judgment with respect to the claims asserted by plaintiff Purnell. Purnell claims that Burke subjected him to a racially hostile working environment, terminated him on the basis of race, and retaliated against him for opposing workplace discrimination. For the reasons that follow, Burke's motion for partial summary judgment is granted.

### BACKGROUND

Burke is a non-profit health care facility providing medical care and rehabilitation assistance to patients who have suffered a debilitating illness or injury. In January 1996, Burke hired Keith Purnell, an African–American, as a Shipping/Receiving Clerk. Purnell was hired by Michael Nestler, and was directly supervised by Patrick Barrow, the co-plaintiff in this case. Mr. Nestler was Mr. Barrow's supervisor.

On December 16, 1996, Burke terminated Purnell's employment, for the stated reason of excessive absenteeism. Burke's policy, as stated in the employee handbook that Purnell received and read, was that an employee could be dismissed for excessive absenteeism. Prior to his termination, Purnell, in June, September, and October 1996, received three written warnings, known as Employee Corrective Action Notices, regarding his pattern of absenteeism. Most of Purnell's numerous

Robert Goodstein, Goodstein & West New Rochelle, NY, for Plaintiffs.

absences came immediately before or after a weekend off from work. Each Notice stated clearly that additional missed days would lead to further disciplinary action. Each Notice was discussed with Purnell, who acknowledged his undeniably poor attendance record. When Purnell was terminated by Nestler in December 1996, he had been absent from work for 6 of the previous 9 days. At the time of his termination, Purnell was given a fourth Employee Corrective Action Notice.

During Purnell's tenure at Burke, he clashed with his supervisor, co-plaintiff Barrow. For example, Purnell informed Nestler of his belief that Barrow was lazy and failed to adequately manage the shipping/receiving work. Nestler subsequently discussed these perceptions with Barrow, in the presence of Purnell. Although Purnell believes he was terminated in part because he was "caught in the middle" between Barrow and Nestler, Purnell admits that the conflict between Barrow and Nestler, sparked in part by his statements about Barrow, had nothing to do with race. Indeed, at no time during his employment did Purnell complain to or notify anyone at Burke that he believed he was being discriminated against on account of race.

Purnell has alleged several incidents in support of his claim that Burke was a racially hostile work environment. On three or four occasions, Nestler allegedly made racially derogatory remarks to or about African-American employees. Only two of these incidents occurred during Purnell's employment at Burke. On December 22, 1995, prior to Purnell's employment at Burke, Nestler allegedly told Barrow "hurry up and get his black ass out of Burke" after they had an argument. On March 15, 1996, Nestler confined Barrow to Nestler's office and made threatening gestures toward him with something that looked like a knife. In September 1996, Nestler again allegedly made racially derogatory remarks to Barrow, which Purnell purportedly overheard. In January 1997, after the termination of Purnell's employment at Burke, Nestler again directed racially derogatory remarks to Barrow, which resulted in

Barrow filing a complaint with the City of White Plains Police Department.

## DISCUSSION

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir. 1996).

The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. *Hayes*, 84 F.3d at 619; *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgement. *Wernick*, 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 250).

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation*, 88 F.3d

at 123; *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). To oppose successfully a motion for summary judgement, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research*, 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted)).

*Discriminatory Termination*

█ The analytical framework for evaluating a claim of discrimination in a Title VII disparate treatment case is well established.[1] The plaintiff must first establish a prima facie case by offering evidence that would permit a reasonable inference of discrimination on the part of the employer. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *McLee v. Chrysler Corporation*, 109 F.3d 130, 134 (2d Cir.1997); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). If the plaintiff makes out a prima facie case, the burden of production shifts to the defendant, who must articulate specific nondiscriminatory reasons for the challenged employment action. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 802; *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir.1996); *Quaratino*, 71 F.3d at 64. If the defendant satisfies this burden of production, the plaintiff must then demonstrate that the defendant's purported legitimate reason was in fact a pretext for a discriminatory motive. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804; *Quaratino*, 71 F.3d at 64. In order to resist successfully a motion for summary judgment, the plaintiff must produce "not simply 'some' evidence, but sufficient evidence to support a rational finding that the legitimate, nondis-

criminatory reasons proffered by the employer were false, and that more likely than not, [discrimination] was the real reason for the discharge." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994) (internal quotations and other citations omitted)); *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

In order to establish a prima facie case of discriminatory termination of employment, the plaintiff must show that he belongs to a protected class, that he was performing his duties satisfactorily, and that he was discharged under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. *McLee*, 109 F.3d at 134. An inference of discrimination may arise if plaintiff's position was filled by someone not a member of plaintiff's protected class. *Sergio de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).

█ Plaintiff Purnell has failed to establish a prima facie case, given the undisputed evidence of his excessive absenteeism. Purnell does not dispute that he missed work on many occasions. Burke has submitted evidence that Purnell's repeated absence disrupted the department and interfered with its efficient operation. Purnell was thus not performing his duties satisfactorily.

The circumstances of Purnell's discharge also do not support an inference of discrimination. The stated reason for his dismissal was his frequent absences from work.[2] Other employees had also been terminated for excessive absenteeism. Additionally, the two employees who replaced Purnell and coplaintiff Barrow, after his termination in January 1997, were African–American and Hispanic. Finally, it should be noted that the same person who fired plaintiff had hired him 11 months earlier. *See Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d

---

1. Because the substantive elements of a § 1981 claim and a Title VII claim are substantially similar, the two claims will be analyzed jointly. *See Amin v. Quad/Graphics, Inc.*, 929 F.Supp. 73, 81–82 (N.D.N.Y.1996).

2. Additionally, Purnell could have been terminated, as had other employees, for representing on his employment application that he had graduated from high school, when in fact he had not.

Cir.1997) (noting the difficulty of imputing invidious motivation where the same individual hired and fired the plaintiff).

The parties dispute whether Purnell notified Burke, in conformance with Burke's policy, that he would not be at work during the absences immediately prior to his dismissal. This dispute is not material, however, because Purnell could and would have been terminated even if he had notified Burke that he would not be reporting to work for those days. Purnell was terminated due to his undisputed pattern of excessive absenteeism, not simply because he failed to notify his employer when he would be absent.[3]

*Hostile Environment*

■ Purnell claims that he experienced a racially hostile environment at Burke, due to the comments and attitudes of Nestler. In order to establish a claim for a racially hostile environment, a plaintiff must show that the workplace was "permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions" of employment and that the objectionable conduct should be imputed to the employer. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)). "The conduct alleged must be severe and pervasive enough to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive." *Schwapp*, 118 F.3d at 110 (quoting *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotations and other citations omitted)).

Whether a workplace is hostile or abusive depends on the totality of the circumstances. *Schwapp*, 118 F.3d at 110. For racially derogatory comments to create a hostile work environment, the comments must be continuous rather than isolated or sporadic. *Id;*

*Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986).

Purnell has not offered sufficient evidence to support a finding that the work environment at Burke was racially hostile and that he experienced it as such. Purnell has offered no evidence that he knew of the statements that Nestler allegedly made to Barrow, with the one exception of the September 1996 remark that he overheard. Many of these remarks occurred either before or after Purnell's employment at Burke. Only two of the complained of events occurred during the approximately one year that Purnell was employed by Burke. Purnell does not allege that any other employee of Burke made any racially derogatory comments to him. Purnell admits that at no time during his tenure did he complain to anyone at Burke that the environment was racially hostile or abusive. Therefore, Purnell's hostile environment claim fails.[4]

*Retaliation Claim*

■ Finally, Purnell alleges that Burke unlawfully retaliated against him. "A prima facie case of retaliation under Title VII requires the plaintiff to show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Holt*, 95 F.3d at 130 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995) (internal quotations omitted)); *Van Zant*, 80 F.3d 708, 714 (2d Cir.1996).

To rebut the plaintiff's prima facie case of retaliation, the defendant must offer legitimate reasons for its action. *Holt*, 95 F.3d at 130. The plaintiff must then offer evidence that defendant's purported reasons are in fact pretextual and that the true reason for defendant's actions was illicit discrimination. *Van Zant*, 80 F.3d at 714.

---

3. Purnell contends that his termination was due to race rather than absenteeism because he did not receive a performance evaluation, as required by Burke policy, and because Burke could have terminated him during or at the end of his probationary period, but did not. The Court fails to understand how either of these facts could plausibly support a claim for racial discrimination on the facts of this case.

4. Of course, because Purnell has not made a sufficient showing to support a finding that he experienced Burke as a racially hostile environment does not mean co-plaintiff will be unable to make such a showing.

Although plaintiff contends that he was retaliated against, he has identified no protected conduct that could conceivably form the basis of a retaliation claim. During his employment at Burke, Purnell did not complain to anyone there about racial discrimination or express any belief that the working environment was racially hostile. Purnell filed his Charge of Discrimination with the EEOC after he was discharged. Therefore, neither the discharge nor the Employee Corrective Action Notices could have been retaliation for Purnell's stated opposition to racially discriminatory practices at Burke.

## CONCLUSION

For the reasons stated, the defendant's motion for partial summary judgment as to the claims asserted by plaintiff Keith Purnell is granted. Because the Court declines to exercise jurisdiction over Purnell's state law claims, those claims are dismissed without prejudice. *See, e.g., Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995).

**SO ORDERED.**